Argued and submitted March 23, affirmed May 6, reconsideration denied by opinion
October 7, 1987
See 87 Or App 635 (1987)

In the Matter of the Suspension of
the Driving Privileges of

## MORGAN
*Respondent,*

*v.*

## MOTOR VEHICLES DIVISION,
*Appellant.*

(862063; CA A40915)

736 P2d 580

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief was Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Robert P. Van Natta, St. Helens, argued the cause for defendant. With him on the brief was Van Natta & Petersen, St. Helens.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

**WARREN, J.**

The state appeals a judgment reversing a Motor Vehicles Division (MVD) order suspending petitioner's driving privileges for refusing to take an Intoxilyzer test. ORS 813.100; ORS 813.410.[1] The issue is whether, after unsuccessfully attempting to contact one attorney and speaking to a second attorney, petitioner's repeated request to speak to an attorney constitutes a "refusal" under ORS 813.100. We conclude that it does not and affirm.

Defendant was arrested for driving under the influence of intoxicants on January 31, 1986, at approximately 6:08 p.m. He was immediately taken into custody and arrived at the Columbia County jail at approximately 6:29 p.m.[2] At approximately 6:40 p.m., petitioner unsuccessfully attempted to contact his attorney, Olson.[3]

At approximately 6:42 p.m., petitioner was allowed to call Peterson, a local attorney who had represented petitioner in a previous civil matter. Petitioner told Peterson that he was in jail and that he was unable to contact his lawyer. He requested that she attempt to contact Olson and have him call the jail. He did not request her advice on whether to submit to the breath test. There is no evidence that the officer knew of the substance of petitioner's conversation with Peterson. Thereafter, the officer asked petitioner to take a breath test. Petitioner said that he wanted to talk to his attorney. The officer responded that petitioner had already had the opportunity to do so and again asked if he would take the test. Petitioner continued to request the opportunity to consult with his attorney.

At 6:47 p.m., Peterson contacted Huffman, Olson's

---

[1] Petitioner's license was suspended pursuant to *former* ORS 482.541, ORS 482.440 and ORS 487.805. Those statutes were repealed at the time of petitioner's arrest and renumbered as indicated in the text.

[2] There are minor factual disparities between the referee's factual findings concerning the time sequence involved in this case and the facts in the record. The disparities are not of such significance as to affect the proper resolution of this case.

[3] It is disputed whether petitioner asked for the telephone number of Olson or of Wilson. The arresting officer claims that petitioner asked for the telephone number of Wilson. The trial court made no finding on the issue except to note that "almost all" deputies are aware that there is no attorney named Wilson in the St. Helens area. Petitioner contends that the officer purposely gave him a wrong number. The court did not make a finding on that claim.

law partner. At 6:49 p.m., Huffman called the jail and spoke with both petitioner and the arresting officer. He advised petitioner to take the test, and petitioner agreed. Huffman testified that he informed the officer that petitioner wished to take the test.[4] The officer concluded that petitioner's repeated requests to speak to counsel, after making the call to Peterson, constituted a refusal. Petitioner was never given the test.

■■    In *Moore v. Motor Vehicles Division,* 293 Or 715, 652 P2d 794 (1982), the court held that a motorist has a constitutional right to consult with someone outside the confines of the jail after being requested to submit to a breath test. The court stated:

> "A request to call a lawyer (or a relative or friend) is not in itself a refusal. It cannot be seized upon as a decisive event which ends the transaction between officer and arrestee as would non-submission or express non-refusal. On the other hand, an insistence on speaking to counsel under circumstances where to do so would significantly delay the testing would be non-submission constituting a refusal. We recognize that injecting circumstantial considerations into the process makes it less predictable than would strict application of the New Jersey rule, but it also makes it less draconian and more accommodative of liberty.

> "We hold that if an arrested person, upon being given the advice required by ORS 487.805(2)(a) and (b), does not submit promptly to the request, his non-submission is a refusal. *We further hold that if the person requests to speak with an attorney, the request itself is not a refusal and the person must be afforded reasonable opportunity to do so unless or until it would interfere with effective administration of the test.* For example, a person might be given opportunity to call during the 15-minute observation period without affecting the validity of the test. If a person requests to communicate and is afforded a reasonable opportunity to do so, consistent with the temporal requirements of the testing process, and the person does not submit to the test, that is a refusal." 293 Or at 723. (Emphasis supplied.)

Under *Moore,* the proper inquiry for determining whether a

---

[4] The officer testified that Huffman did not make this request until he arrived at the station. The trial court, however, stated that the police officer had testified that he could "not remember" when the request was made. Because the officer concluded that petitioner refused to take the test after speaking with Peterson and before speaking with Huffman, the factual disparity is immaterial.

motorist's request to consult with an attorney, or someone else,[5] amounts to a refusal is whether the request was inconsistent with the need to conduct the test in a timely manner. *See Chase v. Motor Vehicles Division,* 63 Or App 15, 20, 663 P2d 412 (1983). No such inconsistency was shown in this case.

■ The trial court focused on the proper issue when it stated that the "time factor" in this case is significant. The trial court noted that a total of only 29 minutes elapsed between the time when petitioner arrived at the jail, under arrest, and the time when Huffman called. The trial court noted further that no exigent circumstances were apparent or testified to. That, in effect, is a finding that the delay involved would not have affected the validity of the test at the time defendant agreed to take it. Under these circumstances, we conclude that the officer's refusal to permit petitioner to take the breath test was unjustified and deprived petitioner of his liberty. *See Moore v. Motor Vehicles Division, supra,* 293 Or at 723.

■■ The state argues, however, that *Moore* does not guarantee a motorist "a particular result from his telephone call, the right to speak to a particular attorney, or insulation from the effects of making an unwise choice in the exercise of the opportunity to communicate." We do not disagree. We read *Moore* to say, however, that only a request to communicate which interferes with the timely execution of the test can constitute a refusal.[6]

Affirmed.

---

[5] The right to communicate does not derive from the Sixth Amendment right to counsel but from the Due Process Clause of the Fourteenth Amendment. *State v. Newton,* 291 Or 788, 802-805, 636 P2d 393 (1981).

[6] Trial courts should make findings regarding the effect of delay on the validity of a test. We believe that that follows from the quoted language of *Moore.*